UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RANDOLPH S. BARNES, ET AL., | ) | CASE NO.1:06CV574 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| FIRST AMERICAN TITLE | ) | OPINION AND ORDER |
| INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Defendant First American Title Insurance Co.'s ("First American"), Motion to Dismiss. For the following reasons, the Court denies in part, and grants in part, Defendant's Motion.

Plaintiffs' Complaint alleges seven causes of action and seeks class certification in connection with the purchase of title insurance. Plaintiffs' allege they refinanced their existing mortgage in May of 2003 and in 2004. In conjunction with the refinancing, they paid the premium rate for title insurance from First American. They allege they were not informed of the opportunity for a discount as provided by law.

1

Plaintiffs' Complaint alleges seven claims, including: a) declaratory and injunctive relief; b) breach of contract; c) fraud; d) breach of fiduciary duty; e) conversion; f) unjust enrichment; and g) breach of duty of good faith and fair dealing. Plaintiffs seek compensatory and punitive damages, expenses, costs, attorneys fees and declaratory and injunctive relief.

### Standard of Review

A motion to dismiss for failure to state a claim upon which relief can be granted brought under Federal Rule of Civil Procedure 12(b)(6), must establish, beyond a reasonable doubt, that the "plaintiff can prove no set of facts in support of his claim which would entitle *him to relief.*" *Wright v. MetroHealth Medical Ctr.*, 58 F.3d 1130, 1138 (6th Cir.1995), *quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The Court must construe the complaint in the light most favorable to the plaintiff, and, for the purposes of this motion, accept all factual allegations as true. *See Central States Pension Fund v. Mahoning Nat'l Bank,* 112 F.3d 252, 255 (6th Cir.1997). "[a] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such a materials are public records or are otherwise appropriate for taking judicial notice". *New England Health Care Employees Pension Fund v. Ernst & Young,* 336 F.3d 495, 502 (6th Cir.2003).

### Analysis

Pursuant to Ohio Revised Code §3905.04(A), every insurer must file with the Ohio Superintendent of Insurance its rates. First American is a member of the Ohio Title Insurance Rating Bureau (OTIRB"), which is licensed by the Ohio Department of Insurance to file a rate manual. The rate manual is binding upon all members of the OTIRB and contains the insurer's rates. The discount rate is available if the customer meets certain criteria, among them is the

2

requirement that the insurer is provided a copy of the prior policy or information that would enable the insurer to verify representations made.

Defendant alleges O.R.C. § 3935.09 provides an administrative remedy that Plaintiffs must first exhaust before they may proceed in Court. O.R.C. §3935.09 states in pertinent part:

> Every rating bureau and every insurer which makes its own rates shall, within a reasonable time after receiving written request therefor and upon the payment of such reasonable charge as it may make, furnish to any insured affected by a rate made by it, or to the authorized representative of such insured, all pertinent information as to such rate. Every rating bureau and every insurer which makes its own rates shall provide within this state reasonable means by which any person aggrieved by the application of its rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. If the rating bureau or insurer fails to grant or reject such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected. Any party affected by the action of such rating bureau or such insurer on such request may, within thirty days after written notice of such action, appeal to the superintendent of insurance, who, after a hearing held upon not less than ten days' written notice to the appellant and to such rating bureau or insurer, may affirm or reverse such action.

### **Plaintiff's Failure to Plead Sufficient Facts**

Defendant alleges Plaintiffs' Complaint fails to plead facts sufficient to support their claims because they have not alleged they complied with the requirements of the rate manual.

Plaintiffs contend they were entitled to the discounted rate based on both PR-9 and PR-10 which are sections of Defendant's rate manual that describe rates for policy discounts when information is provided on their prior policy.

Defendant contends Plaintiffs have failed to allege in their Complaint compliance with the prerequisites set forth in the rate manual for entitlement to the discount rate and, therefore, have failed to state a claim. This Court disagrees.

"In order for a court to dismiss a complaint for failure to state a claim upon which relief

3

can be granted pursuant to Civ.R. 12(B)(6), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. University Community Tenants Union* (1975), 42 Ohio St.2d 242, syllabus. "In construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192. "This standard for granting a motion to dismiss is in accord with the notice pleading regimen set up by the Federal Rules of Civil Procedure and incorporated into the Ohio Rules of Civil Procedure. Under these rules, a plaintiff is not required to prove his or her case at the pleading stage." *York v. Ohio State Highway Patrol* (1991), 60 Ohio St.3d 143. 144-145.

Plaintiffs' Complaint has alleged sufficient facts to put Defendant on notice of the claims involved. Also, it does not appear from the face of the Complaint that Plaintiffs have failed to allege facts that may permit recovery. That Plaintiffs have not pled the prerequisites required to be entitled to the discount is not fatal to their claims at the Motion to Dismiss stage. Plaintiffs' Complaint alleges Plaintiffs provided the necessary information for Defendant to know Plaintiffs were qualified for and entitled to the discounted rate. Whether Plaintiffs provided the necessary background information or documentation is a factual issue to be determined after discovery. Therefore, Defendants Motion to Dismiss for failure to state a claim is denied.

### Plaintiff's Failure to Exhaust Administrative Remedies

Defendant contends, pursuant to O.R.C. §3935.09, Plaintiffs were required to file a complaint with the OTIRB prior to filing this claim. Plaintiffs' failure to do so prohibits them from bringing their claims in this forum. This Court must determine whether the Superintendent

has exclusive jurisdiction to hear the claims set forth in Plaintiffs' Complaint. Defendant cites to *Kazmaier Supermarket, Inc. v. Toledo Edison Co.,* (1991) 61 Ohio St.3d 147 for the proposition that O.R.C. 3935.09 confers exclusive jurisdiction on the OTIRB to hear complaints of rate overcharges. In *Kazmaier,* the Ohio Supreme Court held, where the General Assembly "has enacted a complete and comprehensive statutory scheme governing review by an administrative agency, exclusive jurisdiction is vested with such agency." *Id.* at 153. This Court holds *Kazmaier* is distinguishable as it dealt with the regulation of public utilities under Title 49 of the Ohio Revised Code, not title insurers. Furthermore, no Ohio court has determined the exclusivity of Title 39 claims.

"The doctrine of primary jurisdiction applies where a claim is originally cognizable in a court and enforcement of the claim requires the resolution of issues that have been placed within the special expertise of an administrative body." *State ex rel. Bank One Corp. v. Walker,* (1999) 86 Ohio St.3d 169, 171, citing *United States v. Western Pacific RR. Co.* (1956), 352 U.S. 59, 63-64. "Under this doctrine, the judicial process is suspended pending referral of the issues to the administrative body for its views." *Id.* Primary jurisdiction holds, "questions within the special competency of an administrative agency should be resolved by that agency. *Alltel Tennessee, Inc. v. Tennessee Public Services Comm'n,* 913 F.2d 305, 309 (6th Cir. 1990). In *Lazarus v. Ohio Cas. Group,* (2001) 144 Ohio App.3d 716, 721-722, the Court reasoned:

> Insurer errs, however, in its assumption that appellant's cause of action falls exclusively within the category of rate-making. Lazarus states six causes of action, none of which is exclusively rate-making. The issues raised in these claims focus not on the actual rate charged but rather on the information provided by the insurance company regarding what the rates cover. In other words, the issues are fraud and deceptive practices, unjust enrichment, conversion, breach of contract and fiduciary duty and negligence, not whether the rate charged was acceptable or not.

5

> While the superintendent has the authority to intervene to stop the deceptive actions complained of, and even has the authority to order reimbursement of the overcharged premiums, and thus has authority over a portion of some of the claims, the superintendent does not have the authority to award attorney, accountant or auditor fees, costs, or compensatory or punitive damages. The remedies available to the superintendent fall short of what is requested.
>
> The superintendent likewise has jurisdiction over a simple breach of contract case and portions of the remaining non-negligence claims, but only to the extent of ordering reimbursement of wrongly charged moneys. Regarding breach of good faith and fair dealing, the Ohio Supreme Court has expressly held that the courts share jurisdiction. *State ex rel. Banc One Corp. v. Walker,* (1999), 86 Ohio St.3d 169. The superintendent has the authority to investigate unfair or deceptive practices, to order the offending insurer or agent to stop those practices, to discipline the offending insurer or agent by suspending or revoking his license or fining him, and to reimburse the wrongly charged insured with statutory interest.
>
> The superintendent similarly has limited authority over the conversion and unjust enrichment claims. This authority is limited, however, to punishing the offender, stopping the offending conduct, and enforcing restitution. Again, this authority does not extend to awarding attorney, auditor, or accountant fees, compensatory or punitive damages, or costs as requested by appellant."

The Court in *Lazarus* determined the Superintendent does have primary jurisdiction over the breach of contract and shared jurisdiction on the breach of good faith and fair dealing claims, albeit limited authority to award damages.

However, Ohio case law does not require dismissal of any claims brought to the Court in which the Superintendent has primary jurisdiction. "[P]otential referral of an issue to an administrative agency under the primary jurisdiction doctrine where an action is filed does not deprive the court of jurisdiction over the matter so as to require dismissal of the case." *Banc One Corp. v. Walker* (1999), 86 Ohio St.3d 169, 171. "Rather than dismiss the case, the proper procedure is for the trial court to stay the case and refer to the office of superintendent those issues which the superintendent can help resolve. After that office has resolved the issues that are

6

within its jurisdiction, the case should return to the trial court for adjudication of any remaining matters." *Lazarus,* at 724. However, "the primary jurisdiction doctrine comes into play if the use of administrative proceedings will contribute to a meaningful resolution of the lawsuit; if it will, the trial court should defer any action until that determination is made by the agency." *Lazarus,* at 723. As the Complaint seeks damages outside the scope of the Superintendent's authority, this Court does not find that referral to the Superintendent for the breach of contract and breach of duty of good faith and fair dealing claims would contribute to the meaningful resolution of the suit.

Therefore, the Court finds neither Title 39 nor case law vests exclusive jurisdiction in the Superintendent of Insurance to hear Plaintiffs' claims, and even if such jurisdiction is primary, the Court finds Plaintiffs were not required to file their claims administratively, and this Court has appropriate subject matter jurisdiction over Plaintiffs' Complaint.

### Breach of Contract

Defendant contends Plaintiffs' claim for breach of contract should be dismissed, as the rate manual does not provide a basis for a contractual relationship between Plaintiffs and Defendant. According to Defendant, the rate manual is a creature of statute and complies with Ohio requirements that all issuers of title insurance file a rate manual with the Ohio Department of Insurance. Furthermore, Defendant contends Plaintiffs' Complaint fails to allege the necessary elements of a contract: offer, acceptance, and consideration other than the bare assertion of these elements of a contract.

Plaintiffs contend the contract at issue is an implied-in-fact contract. Plaintiffs' Brief in

7

Opposition to Defendants Motion to Dismiss expressly states, "Plaintiffs are not alleging that the OTIRB rate manual constitutes the contract." The implied contract was between First American and Plaintiffs for the purchase of title insurance.

"Express" and "implied" contracts are both contracts. To recover on either, the proponent must prove that an agreement, based on a meeting of the minds of the parties and on mutual assent, existed, to which the parties intended to be bound." *Lucas v. Costantini* (1983), 13 Ohio App.3d 367, 368, citing *Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney* (1901), 65 Ohio St. 104, 61 N.E. 152. "In contract implied in fact the meeting of the minds, manifested in express contracts by offer and acceptance, is shown by the surrounding circumstances which made it inferable that the contract exists as a matter of tacit understanding." *Point E. Condominium Owners' Assn. v. Cedar House Assn.* (1995), 104 Ohio App.3d 704, 712.

> "If there is a distinction to be made between express and implied contracts, it is in the form of proof generally used to prove each. An express contract connotes a more formal exchange of promises where the parties have communicated in some manner the terms to which they agree to be bound. A contract implied in fact may be proved by showing that the circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended. The most obvious example of the use of the *implied* contract concept occurs where a recovery is sought for services rendered or materials furnished and the circumstances are such that people expect to be paid and pay for such conduct. The law is said to "imply" an obligation on the part of a person who benefits from the services or materials received to pay for the services or materials. *Ashley v. Henahan* (1897), 56 Ohio St. 559, 574. However, the plaintiff must prove that the defendant either requested or assented to such conduct under conditions precluding an inference that the plaintiff acted gratuitously."

*Lucas*, at 369.

Upon review of Plaintiffs' Complaint, the Court finds Plaintiffs have plead sufficient facts to support a breach of contract claim on a Motion to Dismiss. The Complaint clearly

8

alleges the Plaintiffs purchased title insurance from Defendant and that under applicable Ohio law Plaintiffs were entitled to the discounted rate. The circumstances surrounding this transaction are atypical of contracts in that here, at least one Plaintiff purchased a policy from Defendant insuring the mortgage lender, not Plaintiffs, against any title defects. This can be construed, and Plaintiffs have alleged, a possible agency relationship between the mortgage company, acting as agent for Defendant, or a three-party contract. In essence, this is akin to a three players on three teams involved in a three-way deal. Each transaction is contingent upon all three teams fulfilling their contractual obligations. Each gives consideration. Plaintiffs paid monies for the title insurance policy in exchange for mortgage refinancing. The mortgage company provides the mortgage refinancing in exchange for payment and title insurance protection. The title insurer receives premiums in exchange for title insurance. Pursuant to *Lucas*, this transaction is the "most obvious example of the use of the implied contracts concept." Therefore, at this stage in the proceedings Plaintiffs Complaint alleges sufficient facts to support a breach of contract claim.

### Breach of the Duty of Good Faith and Fair Dealing

Defendant contends Plaintiffs' Breach of Duty of Good Faith and Fair Dealing fails to state a claim, as Ohio does not recognize a separate cause of action under this theory. Rather, these duties are assumed in any contract. Defendant cites to three employment cases that held there is no separate duty of good faith and fair dealing in Ohio. However, because these are limited to employment cases they do not instruct on failure to provide discounted insurance rates.

Plaintiffs cite to *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, for the proposition that Ohio recognizes a separate cause of action in tort for breach of the duty of good faith and fair dealing. However, *Hoskins* dealt with an insurers duty in handling payment of claims. This is not the situation confronting the Court in this case. Defendant contends Plaintiffs are not insureds of Defendant under a lenders policy.

The Court finds instructive the holding in the case of *Sears Mortgage Corp. v. Rose* 634 A.2d 74 (N.J. 1993). The Court in *Sears* stated, "[d]uty of good faith and fair dealing pervades insurance contracts; prospective insured must not misrepresent or conceal information concerning risks entailed in coverage, but insurance company, as dominant party, has even greater obligation than insured and must not put technical encumbrances or hidden pitfalls in the way of unsophisticated customers that would undermine their reasonable expectations." *Id* at 84. There is no logical nor legal distinction between good faith dealing in the payment of claims and front end contractual negotiations. In a transaction of this nature, the Court holds the duty of good faith and fair dealing permeates the entire insurance transaction from inception and claim, through investigation, decision of pay/no pay, to end of the relationship. Therefore, and the Court finds Plaintiffs may maintain a separate cause of action.

## Fraud

Defendant contends Plaintiffs' Complaint fails to allege fraud with the requisite particularity. Pursuant to Federal Rule of Civil Procedure 9(b), the Court does find that the Complaint does not provide sufficient detail of the alleged fraud. Therefore, the Court grants Plaintiffs leave to amend the Complaint *instanter*, to state with more specificity: who made

10

statements, when they were made and the contents of the statements made.

Furthermore, Defendant argues Plaintiffs allege only fraud for failure to disclose and not for actual misrepresentation. Plaintiffs contend the Complaint states an allegation of misrepresentation in that it states Defendant misrepresented the premium it charged customers was the legally correct rate. The Court finds this representation stretches the actual language of the Complaint to a degree that does not support a claim for actual misrepresentation. Under its fraud claim Plaintiffs Complaint states, "defendant failed to disclose material information while under a duty to speak." (Complaint at 45); "Defendant fails to give the discounted reissue rate...or to inform their customers that they are qualified for such discounts" (Complaint at 46); "Defendants failed to inform plaintiffs that they were qualified for and were entitled to receive a discount reissue rate" (complaint at 47); Defendant failed to disclose such facts with the intent to induce plaintiffs and the members of the class into relying upon such nondisclosures." (Complaint at 49.)

In Ohio, actual fraud involves an affirmative misrepresentation, whereas constructive fraud results from the "failure to disclose facts of a material nature where there exists a duty to speak." *Layman v. Binns* (1988), 35 Ohio St.3d 176, 178. To establish a claim for fraud a plaintiff must demonstrate: (1) a representation, or where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 169.

11

In this case, Plaintiff has not alleged an actual misrepresentation by Defendant or its agent. Their Complaint clearly and repeatedly posits the failure to disclose the potential for a discounted rate as the source of its fraud claim. Therefore, the Court holds Plaintiffs' fraud claim alleges only constructive fraud.

Next, Defendant contends the "filed rate doctrine" fulfills Defendant's duty to disclose as it requires Defendant file its rates with the ODI and that such filing creates a presumption of knowledge of the rate and discount rate by the consumer. Therefore, Plaintiffs' constructive fraud claim should fail because Defendant satisfied its duty to disclose the availability of the discount rate in the filing of its rate manual.

Plaintiffs contend the Northern District has already examined a similar situation in *Zangara v. Travelers Indemnity Co. Of America,* 423 F. Supp.2d 762 (N.D. Ohio 2006). In *Zangara* (subsequently overruled for lack of subject matter jurisdiction) the Court held the "filed rate doctrine" did not warrant dismissal of Plaintiff's fraud claim as plaintiffs claims did not attack the reasonableness of the filed rates but rather the "alleged deceptive sales practices." The Northern District Court also held a determination was inappropriate at the Motion to Dismiss stage.

The "filed rate doctrine" holds, "any rate filed with the governing regulatory agency is per se reasonable and unassailable in judicial proceedings." *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 18 (2d Cir. 1994). The case law cited by Defendant does not involve the sale of title insurance nor insurance transactions in general. Nor has the Defendant provided case law demonstrating the "filed rate doctrine" applies outside the public utilities or common carrier

12

arenas. All cases cited by Defendant involve common carriers and telephone companies whose filed rates were regulated by federal agencies under federal law. Therefore, the Court does not find the "filed rate doctrine" creates a presumption of disclosure or satisfies the alleged duties owed Plaintiffs, in the absence of law to the contrary.

### Breach of Fiduciary Duty

Defendant contends Plaintiffs' breach of fiduciary duty claim fails because: there was no special relationship between Plaintiffs and First American, that is; there was never any direct contact because the transaction was performed through the mortgage refinancing company. A fiduciary relationship exists when a "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis* (1981), 66 Ohio St.2d 74. The fiduciary role may be created formally or through the existence of an informal, confidential relationship. *Prudential Ins. Co. v. Eslick*, 586 F. Supp. 763 (S.D.Ohio 1984). The confidential relationship is defined as: "one person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal. *Indermill v. United Savings* (1982), 5 Ohio App.3d 243, 245. This confidential relationship cannot be unilateral to impose a fiduciary duty on a party. Rather, both parties in this informal relationship must understand that this special trust and confidence exists. See *Craggett v. Adell Ins. Agency,* (1993) 92 Ohio App.3d 443, 451.

Because the nature of the relationship between the parties and any understandings between them or lack thereof require evidence outside the pleadings, this Court denies

13

Defendant's Motion to Dismiss the breach of fiduciary duty claim.

The Court notes that the Northern District in *Zangara* also distinguished the case of *Blon v. Bank One, Akron, N.A.,* (1988) 35 Ohio St.3d 98, 101, which Defendant relies on for the proposition that no fiduciary duty is owed when the information is publicly available. In *Zangara,* the Court held *Blon* was distinguishable as it determined the issue of fiduciary duty on summary judgment; it dealt with creditor- consumer relationship, not insurance, and the financing issue involved was collateral to the transaction. However, in *Zangara* and in the case before this Court, the sale of the insurance was and is the subject of the transaction. This Court sees no reason to deviate or depart from the reasoning in *Zangara*.

## Conversion

Defendant further alleges Plaintiffs conversion claim fails because it does not seek the return of tangible property but seeks overpayment of insurance premiums. Under Ohio law, conversion is "a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps-Howard Broadcasting Co.,* (1976) 47 Ohio St.2d 224, 226. To prevail on a claim for conversion, the movant must demonstrate: 1) plaintiff's ownership or right to possession of the property at the time of the conversion; 2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and 3) damages. *Haul Transport of VA, Inc. v. Morgan,* Slip Op. No. CA 14859, Montgomery Cty., 1995 WL 328995 (Ohio App.1995); *Fayette Inv. Corp. v. Jack Johnson Chevrolet Co.,* 119 Ohio App. 111, (1963). Furthermore, "if one rightfully secured possession of the property of another he could not be held to have converted it, or to wrongfully

14

possess it, until he failed to restore it upon demand, or by some act or circumstance of his own creation he knowingly and unlawfully exercised dominion over it." *Fidelity & Deposit Co. of Maryland v. Farmers & Citizens Bank of Lancaster,* (1943) 72 Ohio App. 432. In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. *Tabar v. Charlie's Towing Serv., Inc.,* (1994) 97 Ohio App.3d 423, 427-28.

"An action for conversion also requires that the defendant have an obligation to deliver specific money as opposed to merely a certain sum of money." *NPF IV, Inc. v. Transitional Health Services,* 922 F.Supp. 77, 82 (S.D. Ohio 1996). "An action alleging conversion of cash lies only where the money involved is "earmarked" or is specific money capable of identification, e.g., money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum." *Haul Transport of VA, Inc., v. Morgan,* 1995 WL 328995 (Ohio App. 2nd Dist 1995).

Therefore, as Plaintiffs' Complaint does not allege the monies owed were earmarked or sequestered but indicates merely a debt owed, an action for conversion will not lie and the Court grants Defendant's Motion to Dismiss this claim.

### Unjust Enrichment

Defendant next contends Plaintiffs may not seek unjust enrichment damages when there exists a contract governing the parties conduct. Furthermore, Defendant alleges unjust

15

enrichment is not warranted as Plaintiffs did not provide a copy of the prior policy or the requisite information required by the rate manual.

"An action for unjust enrichment will lie where a party retains money or a benefit that in equity or justice belongs to another." *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 222 (6th Cir .1992)(citing *Hummel v. Hummel*, 133 Ohio St. 520, (1938)). In a claim for unjust enrichment, Plaintiff must assert the following: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*,(1984) 12 Ohio St.3d 179,; *Wildner Contracting v. Ohio Turnpike Comm'n*, 913 F.Supp. 1031 (N.D.Ohio 1996). "It is well-established that Ohio law does not permit *recovery* under the theory of unjust enrichment when an express contract covers the same subject." *Teknol, Inc. V. Buechel*, No C-3-98-416, 1999 WL 33117391 unreported (S.D. Ohio Aug. 9, 1999) citing *Ullmann v. May*, (1947) 147 Ohio St. 468, (syllabus ¶ 4). "In the absence of fraud or bad faith, a person is not entitled to compensation on the ground of unjust enrichment if he received from the other that which it was agreed between them the other should give in return." *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir.1975).

In *Resource Title Agency, Inc., v. Morreale Real Estate Services, Inc.*, 314 F. Supp.2d 763, 772 (N.D. Ohio 2004), the Court held, "unjust enrichment may be pled in the alternative when the existence of an express contract is in dispute," citing *Lightbody v. Rust*, No. 80927, 2003 WL 21710601, at *8 unreported (Ohio. App. July 24, 2003), "and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." citing *Wolfer Enterprises v. Overbrook Development Corp.*, (1999) 132 Ohio App.3d

16

353, 357.

The Court finds that Plaintiffs have met the pleading requirements for unjust enrichment whether through averments of fraud or the existence of a contract in dispute. The Complaint states with sufficient specificity the actions by which Defendants have been unjustly enriched. Also, Ohio law clearly supports pleading in the alternative, permitting Plaintiffs to plead both breach of contract and unjust enrichment claims, though they may not prevail on both. Therefore, the Court denies Defendant's Motion to Dismiss Plaintiffs' Unjust Enrichment claim. Furthermore, whether Plaintiffs provided a copy of a prior policy or other information is an issue of fact to be determined after completion of discovery.

### Injunctive Relief and Declaratory Judgment

Because the Court finds that Injunctive relief is a remedy, should Plaintiffs prevail, and the Court further finds Plaintiffs' Complaint alleges the practice of nondisclosure of the discounted rate is ongoing, the Court grants Defendant's Motion to Dismiss Plaintiffs claim insofar as it states a claim for injunctive relief.

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Nevertheless, the Supreme Court has reiterated the discretionary nature of the Act. In *Public Affairs Press v. Rickover*, 369 U.S. 111 (1962), the highest court opined: "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so," citing *Brillhart v. Excess Ins. Co.* 316 U. S. 491, 494, 499 (1942)]. Put

another way, the declaratory judgment statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64 at 72 (1985).

Where as here, the parties have already filed a substantive suit seeking relief, the Court refuses to exercise its discretionary authority to rule on a declaratory judgment on the legal relationships and issues presented.

Therefore, the Court grants Defendant's Motion to Dismiss Plaintiffs' claims for conversion and Injunctive relief. The Court declines to exercise its discretion on Plaintiffs' claim for declaratory judgment. The Court grants Plaintiffs leave to amend their Complaint *instanter*, to state with greater particularity their claim of fraud. The Court denies Defendant's Motion on all other counts.

IT IS SO ORDERED.

8/4/06
Date

*Christopher A. Boyko*
CHRISTOPHER A. BOYKO
United States District Judge

18